## Hough and others *against* DeForest :

### IN ERROR.

*A*, being indebted to *B*, by note, mortgaged to him a piece of land, to secure the payment of the debt ; *A* having previously conveyed the same land to his children, by a deed, which was not recorded, until after the mortgage to *B*. *A* died intestate, leaving personal estate, less in amount, after deducting the widow's share, than the mortgage debt.   *C*, one of his children, became administrator of his estate ; and while administrator, paid, from his own funds, *A's* note to *B*, and took an assignment of it,  together with a conveyance of the mortgaged premises, to himself.   *C* afterwards assigned the note, and conveyed the mortgaged premises to *D*.   On a bill of foreclosure, brought by *D*, against the heirs of *A*, it was held, that the transaction between *C* and *B* was a purchase of the mortgage debt, by *C*, in his individual capacity, and

not a payment of it, by him, as administrator; and consequently, that the plaintiff having, as assignee, the lien originally created by the mortgage, was entitled to a decree of foreclosure.

THIS was a bill to foreclosure the equity of redemption in mortgaged premises.

On the 12th of *July,* 1819, *Joseph Squires* mortgaged to *Nathaniel Lothrop,* a piece of land in *Fairfield,* to secure the payment of a promissory note for 216 dollars, payable on demand, with interest. On the 1st of *December,* 1825, while this note remained unpaid, *Squires* died intestate, leaving the defendants, *Mary Hough,* wife of *Richard H. Hough,* and *Mary-Ann Green,* wife of *Nathaniel C. Green,* *Francis Squires,* since deceased, and other children, his heirs at law. On the 5th of *December,* 1825, *Charles Squires,* who was also one of the children and heirs at law of the mortgagor, and *Nathan Beers,* were appointed administrators of his estate, who accepted the trust, and shortly afterwards returned an inventory of such estate, embracing real and personal estate, amounting to 1392 dollars, *viz.* real estate, 1087 dollars, personal, 305 dollars. The court of probate, on the 17th of *January,* 1826, set out to the widow, in personal estate, the sum of 115 dollars, and on the 19th of *March* following, appointed distributors to set out her dower; and no further proceedings in the settlement of the estate were ever had in the court of probate. On the 12th of *January,* 1827, *Charles Squires,* being still administrator, paid to *Lothrop* the amount due on said note, from his own funds, and not from any avails of the estate of the deceased mortgagor; and *Lothrop* thereupon delivered said note to *Charles Squires,* without any written transfer, assignment or indorsement made thereon. *Lothrop* also conveyed, by quit-claim deed, the mortgaged premises to *Charles Squires.*

*Charles Squires* assigned said note, and conveyed the mortgaged premises, by a quit-claim deed, to his brother, *Francis Squires,* who afterwards assigned and conveyed them to the plaintiff. There is now due on the note, the sum of 414 dollars, 48 cents.

By deed, dated *June* 4th, 1800, and recorded *December* 7th, 1825, *Joseph Squires* conveyed the premises to his children,

*viz. Charles, Joseph* jr., *Sarah, Samuel, Elizabeth, Mehitable, Mary-Ann* and *Francis Squires.*

The court granted the prayer of the bill, and decreed a foreclosure. The defendants thereupon, by motion in error, brought the record before this court for revision.

*Bissell,* for the plaintiffs in error, contended, That the the transaction between the administrator and the mortgagee, was a *payment* of the mortgage debt. First, it was the duty of *Squires, as administrator,* to pay the debt, and clear the estate. This is admitted, provided he had assets; and the want of assets is the only ground upon which the presumption that he paid as part owner of the equity, and not as administrator, can be sustained. This presumption is inadmissible. Where there is no representation of insolvency, the law infers, as a *presumptio juris,* which cannot be rebutted, that there are assets in the hands of the administrator. A deficiency of assets can be shewn in no other way than by a judicial decision of the court of probate, upon a comparison of the debts and charges with the inventory. Suppose *Joseph Squires* had made a second mortgage; would his administrator be entitled to foreclose that mortgage, upon the facts found in the case?

Secondly, *Joseph Squires* having conveyed the premises to his children, in 1800, did not own the land, when he made the mortgage in question. It was only in consequence of that deed's being unrecorded, that the mortgagee had any title. Still, the deed was good against *Joseph Squires,* and his representative. Had the grantee redeemed the mortgage, that payment would have constituted a valid claim in his favour against the estate. What possible room is there, then, for the presumption that *Charles Squires* paid the mortgage as owner of the equity of redemption, when every dollar that he thus paid, gave him a claim against himself, as administrator?

*Dutton,* for the defendant in error, insisted, That as *Charles Squires* paid for the note in question, with his own money, he is equitably entitled to it, as much as where a man pays for land standing in the name of another. An administrator is presumed to act in that capacity, only where it is

necessary for the protection of the estate.   *Johnson* v. *Black-man,* 11 *Conn. Rep.* 342.   He is not bound, under any cir-cumstances, to pay debts, any further than he has personal assets.   It appears, in this case, that he had not sufficient to pay the debt in question.   If *Charles Squires* paid the note as administrator, he discharged his own land of a lien, and charged the estate.   The presumption, therefore, would be, that he did his duty, by protecting the estate.   A court of equity will preserve a lien, as far as practicable, for the benefit of all who pay the debt ; as in the law of joint promi-sers.   The acts of *Charles Squires* shew, that his intent was, to buy the note.   The assignment was to himself alone, and not to him as administrator, nor to him and his co-adminis-trator.   He afterwards disposed of the note as his own.   It does not appear, that *Lothrop* presented the note as a claim against *Joseph Squires'* estate.

WAITE, J.   It appears that *Joseph Squires*, being indebted to *Lothrop*, by note, mortgaged certain land to secure the payment of the debt.   He had previously given a deed of the same land to his children, which was not recorded until some time after the mortgage ; and consequently, their title is postponed to that of *Lothrop*.   Under this conveyance, the defendants claim one third of the land embraced in the mortgage deed.

If *Lothrop* still retained his mortgage, there can be no doubt, but that he could sustain a bill for a foreclosure against these defendants.   And it would be no answer to such a bill, that the mortgagor was still living, and abundant-ly able to pay the debt, or had died, leaving property suffi-cient for that purpose.   The lands having been pledged for the payment of the debt, he would have a right to call upon those entitled to the equity of redemption, to pay it, or be foreclosed, without any efforts, on his part, to collect the note of the maker, or his legal representatives.

Had *Lothrop* assigned the mortgage directly to the plain-tiff, it is equally clear, that the latter would stand in the place of the former, and be entitled to the same relief.   And the effect would be precisely the same, had the plaintiff derived his title indirectly, by means of several intermediate convey-

ances, provided they were all valid, and sufficient to transfer the mortgage. And such, he claims, is the present case.

But it is insisted, on the part of the defendants, that one link in the chain of the plaintiff's title, is defective : that as his title is derived through *Charles Squires*, who, at the time of paying the debt, and taking an assignment, was one of the administrators upon the estate of the mortgagor, it is to be presumed, that the debt was paid by him, as administrator, and the mortgage thereby extinguished.

This presumption would, indeed, arise, had it appeared, that the debt was paid out of the assets belonging to the estate of the mortgagor. But this presumption is entirely removed, by the finding of the court. It is expressly found, that this debt was not paid from any avails of the estate, but from *Charles Squires own funds*, and that the land mortgaged, was transferred to him, by the mortgagee.

No objection is urged against this payment and transfer, upon the ground that he was one of the owners of the equity of redemption ; nor could any such objection prevail : for he had no right to the possession of the land against the mortgagee, until the debt was paid. And had he paid it, (were there nothing more in the case,) he would have a right to call upon his co-tenants, to contribute their respective portions of the debt, or forfeit their respective shares of the equity of redemption.

This right to do so, is denied, solely upon the ground, that at the time of the purchase, he was one of the administrators upon the estate of the mortgagor.

But do these defendants shew, that such a course would be inequitable or unjust ? In the first place, the defendants, Mrs. *Hough*, and Mrs. *Green*, have not only an interest in the lands mortgaged, by virtue of the deed from their father, but, as his children, and heirs at law, have an interest in the estate left by him, at his decease. And it does not appear, that it would be more injurious to them to be called upon, by a bill for a foreclosure, than it would be, to have the property left by their father, sold, to pay off the mortgage.

In the next place, they do not shew, that their father left personal estate sufficient to pay it, after deducting the allowance made, by the court of probate, for their mother's sup-

port. Nor does it appear, that any order has been given to sell real estate to pay this debt. But it does appear, that *Charles Squires* paid his own money to redeem the land for the benefit of himself, and the other owners of the equity of redemption; and he manifestly was entitled to re-imbursement, either from his co-tenants, or the estate of his father, for all moneys paid by him, which it did not belong to him to pay. And until thus re-imbursed, he had a right to retain his lien upon the land. He might, indeed, have presented this debt, as one against the estate of his father, and caused the assets to be applied in satisfaction of it. But it is not found, that he has done it. The estate, it is true, is not settled; but he is accountable for all he has received. Before obtaining any satisfaction for the mortgage, he assigned it; and all that equity which he had, is now vested in the plaintiff. The lien which the original mortgagee had upon the land for the security of the debt, still remains, and has been transferred, to the plaintiff. And, in our opinion, that lien has neither been destroyed nor impaired, by passing through the hands of *Charles Squires*, while he was an administrator upon the estate of the mortgagor, in the manner shewn by the finding; and consequently, that there is no error in the decree of the superior court.

In this opinion, the other Judges concurred, except SHERMAN, J., who gave no opinion, having been of counsel in the suit.

Decree affirmed.